UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOAH SYL JOHNSON,

           Plaintiff,           Case No. 1:17-cv-473

v.           Hon. Paul L. Maloney

FERRIS STATE UNIVERSITY DEPARTMENT
OF PUBLIC SAFETY, *et al.*,

           Defendant.
_____/

**REPORT AND RECOMMENDATION**

This matter is now before the Court on defendants Diana Hepler and Michael Chamberlain's motion to dismiss (ECF No. 11).[1]

    **I.**    **Plaintiffs' claims**

*Pro se* plaintiff Noah Syl Johnson filed this action while incarcerated at the Ingham County Jail and has since been released on probation. Opinion (ECF No. 4, PageID.12). This action involves claims which arose during the course of his arrest in Big Rapids, Michigan. In his complaint, plaintiff sued the Ferris State University ("FSU") Department of Public Safety, the Big Rapids Public Safety Department, and the Mecosta County Sheriff's Department. Plaintiff also sued individuals employed by those departments: FSU Department of Public Safety Sgt. Diana Helper and Officer Michael Chamberlain; Big Rapids Public Safety Department Sgt. Jeff Hauger and Officer Jason Kuiawa; and Mecosta County Sheriff's Department Deputy Sgt. Pippin. *See* Compl. (ECF No. 1).

---

[1] The Court notes that plaintiff incorrectly identified defendant Sgt. Diana Hepler as Sgt. Diana "Helper." The Court will use Sgt. Hepler's correct name in this report.

1

Plaintiff set forth the following allegations in his complaint. On January 23, 2016, plaintiff was spending time in his dorm (room no. 1103) watching television with friends or talking to other individuals in room no. 807. Plaintiff left to go to the store, discovered he had forgotten his wallet, and returned to the dorm. He was preparing to get on the elevator, when the elevator door opened. Non-party hall monitor Sarah Campbell[2] was in the elevator with defendant Officer Chamberlain. At that time, Campbell said "that's [sic] Noah Johnson" and Chamberlain asked for plaintiff's identification, which he provided. Officer Chamberlain asked plaintiff to walk with him toward his room and then asked if he could come into the room. Plaintiff refused. Chamberlain opened plaintiff's door and sniffed and said, "It smells like marijuana in here." As discussed in more detail below, Officer Chamberlain and Sgt. Hepler detained plaintiff, they tumbled down a flight of stairs, plaintiff fled, plaintiff returned to meet with the officers, and then fled again when Officer Chamberlain reached for his gun. *See* Compl. (ECF No. 1, PageID.1-4). Plaintiff seeks $1,600,000.00 of compensatory damages ($200,000.00 from each defendant) and $300,000.00 in punitive damages. *Id*. at PageID.4.

The Court construed plaintiff's complaint as alleging: (1) unlawful arrest; (2) excessive force; and, (3) race discrimination (based upon plaintiff's allegation that "although [plaintiff's] roommate admitted that the marijuana was his, he was not subjected to the same treatment"). Opinion at PageID.13-14. On initial screening, the Court dismissed defendants FSU Department of Public Safety, Big Rapids Public Safety Department, and Mecosta County Sheriff's Department and ordered service on the individual defendants. *See* Order (ECF No. 5).

Defendants Sgt. Hepler and Officer Chamberlain filed the present motion to dismiss after accepting waivers of service of the complaint. Shortly thereafter, the Court entered a

---

[2] Plaintiff sometimes refers to her as "Sarah Cambell".

"standard case management order in a prisoner civil rights case" on September 8, 2017 (ECF No. 13). It appears that plaintiff did not receive the case management order, since it was returned as not deliverable (ECF No. 14). It also appears that plaintiff took some actions in this matter, because he sent discovery materials to the Court in December 2017. *See* Letter returning discovery material (ECF No. 20). However, plaintiff did not advise the Court of his correct address until December 18, 2017. *See* Change of Address (ECF No. 19).

Defendants Hepler and Chamberlain moved for summary judgment on January 30, 2018 (ECF No. 23). On February 2, 2018, additional motions for summary judgment were filed by defendants Sgt. Hauger and Officer Kuiawa (ECF No. 28) and defendant Deputy Sgt. Pippin (ECF No. 31). The Court held a status conference on February 16, 2018 (ECF No. 34) to address irregularities, e.g., whether plaintiff ever received a copy of the case management order and the motion to dismiss. Plaintiff expressed a desire to retain counsel, so the matter was re-set for March 19, 2018. At that time, it became apparent that plaintiff was not going to retain counsel. In addition, since plaintiff was no longer incarcerated, the Court entered a new case management order consistent with a general civil litigation case. *See* Minutes (ECF No. 35) and Case Management Order (ECF No. 36). Consistent with the matters discussed at the status conference, the Court denied the outstanding motions for summary judgment and directed plaintiff to file a response to the motion to dismiss, which he did. *See* Order (ECF Nos. 37, 40 and 41). Sgt. Hepler and Officer Chamberlain's motion to dismiss is fully briefed and ready for decision.

   **II.**  **Defendants' motion to dismiss**

   **A.**  **Legal Standard**

Defendants have moved to dismiss plaintiff's claims for unlawful arrest (unlawful seizure) and excessive force pursuant to Fed. R. Civ. P. 12(b)(6) on the ground of qualified

immunity, and his claim for race discrimination (denial of equal protection) on the grounds of both failure to state a claim and qualified immunity. As an initial matter, a complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. In this regard, while *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004).

Here, defendants Hepler and Chamberlain assume that plaintiff has alleged claims against them under the Fourth and Fourteenth Amendments for excessive force and "discrimination/denial" of Equal Protection.[3] The Sixth Circuit set out the standards applicable to addressing a motion to dismiss based on qualified immunity in *Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015):

---

[3] In deciding this motion, the Court will not address any documentation filed in support of defendants' motions for summary judgment, which were denied without prejudice on March 21, 2018. *See* Order (ECF No. 37).

4

> [P]laintiff's civil rights claim against the individual officers in their individual capacities implicates qualified immunity. Qualified immunity, if it applies, is a defense not just against liability, but against suit itself. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Hence, insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery. *Id*.
>
> Qualified immunity ordinarily applies unless the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)). Qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231, 129 S. Ct. 808.
>
> Since the defendant officers have raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). At the pleading stage, this burden is carried by alleging facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) (observing that "bare allegations . . . should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.")). Plaintiff is thus obliged to plead facts that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right. *al-Kidd*, 131 S. Ct. at 2083-84. Moreover, the allegations must demonstrate that each defendant officer, through his or her own individual actions, personally violated plaintiff's rights under clearly established law. *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937; *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).

*Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

In addressing claims of qualified immunity, the Supreme Court recently reiterated that "the longstanding principle that 'clearly established law' should not be defined 'at a high level

5

of generality.'" *White v. Pauly*, -- U.S. --,  137 S. Ct. 548, 552 (2017), quoting *al-Kidd*, 563 U.S. at 742.

> As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987).  Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*, at 639, 107 S. Ct. 3034.

*Id*. at 552.

### B. Discussion

#### 1. Unlawful seizure

For purposes of their motion, Sgt. Hepler and Officer Chamberlain assume that plaintiff's allegations establish that they seized plaintiff, i.e., that if plaintiff did not voluntarily agree to be detained that he would be handcuffed. Defendants' Brief (ECF No. 12, PageID.38). "Under the Fourth Amendment, there are three types of permissible encounters between the police and citizens: consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked some questions; a temporary involuntary detention or *Terry* stop which must be predicated upon "reasonable suspicion;" and arrests which must be based on probable cause." *United States v. Bueno*, 21 F.3d 120, 123 (6th Cir. 1994).  *Terry* is a limited exception to the normal requirements of probable cause, which permits a police officer briefly to detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity has occurred or is about to occur." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).

> In evaluating the constitutionality of a *Terry* stop, we engage in a two-part analysis of the reasonableness of the stop. We first ask whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion.  In

6

>answering this question, we examine the totality of the circumstances to determine the reasonableness of the investigatory stop.

*Id*. (internal quotation marks and citations omitted).  "[T]he totality of the circumstances approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002).  "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."  *Id*. citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Second, the court examines whether the degree of intrusion "was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances."  *Davis*, 430 F.3d at 354 (quoting Garza, 10 F.3d at 1245).

Defendants contend that plaintiff was properly detained  because  as the Supreme Court held in *Terry*, an officer may seize an individual without offending the Fourth Amendment if the "officer has reasonable suspicion that criminal activity may be afoot."  *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008).  The Court disagrees.  Under the facts as alleged in the complaint, Sgt. Hepler and Officer Chamberlain were not aware of "specific and articulable facts which gave rise to reasonable suspicion" that plaintiff was engaged in criminal activity at the time they commenced their investigation.  According to the complaint, when plaintiff returned to the building, Hall Monitor Sarah Campbell was standing with Officer Chamberlain outside the elevator.  Compl. (ECF No. 1, PageID.2).   Campbell identified plaintiff as Noah Johnson, Chamberlain examined plaintiff's school I.D. and driver's license, and walked toward plaintiff's

7

dorm room. There is no allegation that Officer Chamberlain had a warrant to search plaintiff's room or that plaintiff was involved in any criminal activity when he returned to the dorm.

Plaintiff refused Chamberlain's request to enter the room. Chamberlain disregarded plaintiff's objection to the search, opened the door, stated that "it smells like marijuana in here" and told plaintiff "you smell like marijuana too." *Id*. at PageID.3. Plaintiff alleged that he opened the study room door and told Chamberlain the smell was coming from that room, and also opened the stairwell door and said it was coming from there as well. *Id*. At that point, Officer Chamberlain allegedly pushed plaintiff against the wall and told plaintiff that he was not free to leave as Sgt. Hepler stood in front of plaintiff. *Id*.

Based on the facts set forth in the complaint, the Court concludes that the officers did not have a reasonable suspicion to detain plaintiff when he returned to the dorm. Rather, Officer Chamberlain only developed a reasonable suspicion that criminal activity had occurred after he detained plaintiff and conducted a non-consensual, warrantless search of plaintiff's dorm room. Accordingly, under the facts as alleged in the complaint, Officer Chamberlain and Sgt. Hepler are not entitled to qualified immunity with respect to the alleged detention of plaintiff, and their motion to dismiss should be denied on this claim.

    **2.  Excessive force**

Plaintiff also contends that defendants used excessive force. "It is well-recognized that 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or a threat thereof to effect it.'" *Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008), quoting *Graham v. Connor*, 490 U.S. 386, 396. Claims that law enforcement officers used excessive force in the course of an investigatory stop or arrest are analyzed under the Fourth Amendment's reasonableness standard. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th

Cir. 2008). The question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them at the moment force is used, without regard to their underlying intent or motivation. *Griffith v. Coburn*, 473 F.3d 650, 656 (6th Cir. 2007). Thus, the use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*, quoting *Graham*, 490 U.S. at 396 (citations omitted). "[W]hen determining the reasonableness of the force used, courts should pay particular attention to 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight'" (the "*Graham* factors"). *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001), quoting *Graham*, 490 U.S. at 396.

In his complaint, plaintiff alleged that defendants Hepler and Chamberlain used excessive force while he was being detained. According to plaintiff, after Officer Chamberlain put him against the wall, Sgt. Hepler said, "We can do this the easy way or the hard way." Compl. at PageID.3. When plaintiff asked "What's the hard way?", Sgt. Helper answered "with cuffs on." *Id*. Plaintiff responded, "I'm calling my attorney." *Id*. After this exchange, plaintiff alleged that he "was immediately rushed and tackled and we all went tumbling down the stairs." *Id*. When they stopped tumbling down the stairs, plaintiff "was not in their grasp any longer and afraid." *Id*. Plaintiff then "ran to the 7th floor, down the hallway, up the other stairwell to Room 808 [apparently where 'Kristina' lived], nobody was there so I left my headphones on Kristina's bed." *Id*. "After a few minutes in Kristina's room I got myself calmed down and talked myself into not being afraid and went back to talk to the officers." *Id*. However,

> As soon as I opened the door to the stairwell the officer was reaching for his gun so I ran down the hallway, down some stairs out the door and laid on the ground and put my hands behind my back on my own, I was scared I was going to get shot.

9

*Id.* At that time, defendants Deputies Tanner and Haynes handcuffed plaintiff, got him off the ground, search him, and put him the back seat of Sgt. Hepler's car. *Id.* at PageID.4.

As discussed, Sgt. Hepler and Officer Chamberlain did not have a basis to detain plaintiff. Because these officers improperly detained plaintiff, they had no "right to use some degree of physical coercion or a threat thereof" to effect the detention. Accordingly, defendants are not entitled to qualified immunity with respect to the alleged use of excessive force and their motion to dismiss should be denied on this claim.[4]

### 3. Race discrimination

Finally, Officer Chamberlain seeks dismissal of plaintiff's discrimination claim for failure to state a claim for relief and, in the alternative, qualified immunity from that claim. The Court will review this claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. As previously discussed, a complaint may be dismissed if it fails to state a claim which is "plausible on its face." *Iqbal*, 556 U.S. at 678. "It is axiomatic that the Equal Protection Clause of the Fourteenth Amendment protects citizens from police action that is based on race." *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005). A Fourteenth Amendment claim of selective enforcement could lead to § 1983 liability if a plaintiff demonstrates "purposeful discrimination" in the officers' otherwise valid enforcement of the law against him.

---

[4] In this regard, the Court notes that even if plaintiff had been legally detained, his allegation that Officer Chamberlain "was reaching for his gun" when plaintiff opened the door to the stairwell would have constituted the use of excessive force. According to plaintiff, Officer Chamberlain's action prompted him to run down the stairs, out the building, and lie down on the ground with his hands behind his back. The Court recognizes that a police officer should not be required to risk his life in order to make an investigatory stop, *see United States v. Spencer*, 91 F.3d 145 (6th Cir. 1996), and that "if the surrounding circumstances give rise to a justifiable fear for personal safety, a seizure effectuated with weapons drawn may properly be considered an investigative stop," *United States v. Hardnett*, 804 F.2d 353, 357 (6th Cir. 1986). In this case, if plaintiff had been subject to a *Terry* stop, it would have been reasonable for Officer Chamberlain to use some force to detain him, because plaintiff was fleeing in an attempt to evade detention or arrest. However, given the severity of the crime at issue (possession or use of marijuana in a college dorm) and the non-existent threat posed by the suspect (an identified, unarmed college student running through the dorm in which he lived), the Court concludes that the force used by Officer Chamberlain of "reaching for his gun" was objectively unreasonable under the facts as alleged in the complaint.

*Cunningham v. Sisk*, 136 Fed. Appx, 771, 774 (6th Cir. 2005), citing *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). To prevail on a claim of selective enforcement, plaintiff must establish that the challenged police action "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Bennett*, 410 F.3d at 818, quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985). "To show discriminatory effect, a plaintiff can proffer evidence showing similarly situated individuals of another race were treated differently through statistical evidence or identifying a person of another race who the police treated differently." *Id*. "To show discriminatory purpose, a plaintiff can proffer evidence that an official chose to prosecute or engage in some other action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Bennett*, 410 F.3d at 818 (internal quotation marks omitted).

Officer Chamberlain contends that plaintiff has failed to plead facts sufficient to show that he treated plaintiff differently as compared to similarly situated person. The Court agrees. Here, plaintiff alleged there was an "overtone that had some discriminatory connotation" to his arrest (in his words):

> Officer Michael Chamberlain questioned my roomate Chris Lawrence concerning marijuana and he amitted to it. I myself didn't get arrested for marijuana, caught with it, drop dirty for it, or any of the such but he filed charges against me for it. Is it that Chris just "happened to be white" or did something take place that was discriminatory in nature?

Compl. at PageID.4.

Plaintiff appears to assert that his white roommate admitted to marijuana use or possession, but that he (plaintiff) was the one arrested. However, plaintiff has not established that his roommate was similarly situated for purposes of this constitutional claim. "In order to make out an equal protection claim on the basis of selective enforcement, a plaintiff must demonstrate that someone similarly situated but for the illegitimate classification used by the government actor

11

was treated differently." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). As discussed, plaintiff alleged that he was detained, demanded to speak to a lawyer, fled from the officers, returned to talk to the officers, and then fled again. Plaintiff made no similar allegations with respect to his roommate. Rather, plaintiff alleged that his roommate "a[d]mitted to it" when Officer Chamberlain questioned the roommate "concerning marijuana." Furthermore, while plaintiff appears to claim that the "similar" criminal activity involved marijuana, he contradicts this theory by alleging that he did not "get arrested for marijuana", get "caught with it" or "drop dirty for it". In short, plaintiff has failed to state a claim that his similarly situated white roommate was treated differently. *See, e.g., Abdul-Khaliq v. City of Newark*, 275 Fed. Appx. 517, 522 (6th Cir. 2008) (in rejecting the plaintiff's equal protection claim, the court observed that "[a]lthough [the plaintiff] argues that he was similarly situated to his white girlfriend, who was not arrested, [the plaintiff] was yelling, cursing, and making gestures perceived to be threatening, while his girlfriend was not"). Accordingly, plaintiff's discrimination claim should be dismissed.

### III.    RECOMMENDATION

For these reasons, I respectfully recommend that defendants motion to dismiss (ECF No. 11) be **GRANTED** as to plaintiff's race discrimination against Officer Chamberlain and **DENIED** in all other respects.

Entered: 8/29/2018                    /s Ray Kent_____

                                                Ray Kent
                                                U.S. Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).